IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| JACOB A. SCHUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  1:15-cv-01013 (JCC/IDD) |
| | ) |
| LEILA H. ZACKRISON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Leila Zackrison, M.D. ("Zackrison"), and Leila Zackrison, M.D., P.C.'s ("Practice") (collectively "Defendants") Motion to Dismiss. [Dkt. 5.]  In response to the motion, Plaintiff Jacob A. Schur ("Schur") moved to voluntarily dismiss the Practice as a defendant, while maintaining suit against Zackrison.  [Dkt. 10.] For the following reasons, the Court will grant Plaintiff's motion to voluntarily dismiss the Practice and will deny Defendants' motion to dismiss.

**I. Background**

On June 7, 2012, Plaintiff Jacob A. Schur sought medical consultation and treatment from Defendants regarding two tick bites.  (Compl. [Dkt. 1] ¶¶ 14-15.)  A nurse at Defendants' medical practice ordered laboratory tests to determine if Schur

1

had Lyme disease. (*Id.* ¶ 14.) Before receiving the test results, the nurse diagnosed Schur with several bacterial infections, including "mycoplasma pneumonia, chlamydophila pneumonia, and legionella." (*Id.* ¶ 20.) The nurse ordered Schur to begin taking prescription antibiotics, to receive a vitamin injection, and to undergo more tests. (*Id.* ¶ 21.) The tests later returned negative for Lyme disease. (*Id.* ¶ 23.)

Despite the negative tests, Defendants' staff allegedly told Schur he was "very ill, suffered from multiple conditions, and needed extensive treatment to help make him better." (*Id.* ¶ 26.) One nurse allegedly told Schur his failure to follow the recommended course of treatment could cause him to "have a stroke, develop shingles, or develop other ailments." (*Id.* ¶ 31.) In response to these statements, Schur began a course of treatment that included laboratory tests, "extensive" antibiotic prescriptions, self-injected vitamins, and a specific diet. (*Id.* ¶¶ 29-30.) Defendants sold these vitamins and dietary supplements. (*Id.* ¶ 33.)

After four months of treatment, Schur met with Dr. Zackrison for the first time in October 2012. (*Id.* ¶ 38.) Zackrison told Schur he was "very ill" and diagnosed him with Lyme disease and several infections, including "anaplasmosis, babesiosis, mycoplasmosis/legionella, viral overload, encephalopathy/encephalitis, chronic neuritis, and

2

hypercalcphia," among others. (*Id.* ¶¶ 41-42.) To treat these conditions, Zackrison recommended more antibiotics, vitamins, tests, and also intravenous nutrients. (*Id.* ¶ 43.) The combined charges for Schur's treatment were "approximately twenty-five thousand dollars." (*Id.* ¶ 53.)

After receiving Zackrison's diagnosis, Schur sought a second doctor's opinion. (*Id.* ¶ 44.) That doctor concluded that Schur never had Lyme disease "or any other condition that required treatment" and that the treatment Schur received was not "medically necessary." (*Id.* ¶¶ 46, 49.) Schur then began legal proceedings.

Schur, an attorney, filed a *pro se* warrant in debt against Zackrison in Arlington County General District Court on May 30, 2014, and a bill of particulars on August 25, 2014. (Warrant in Debt [Dkt. 5-3]; Bill of Particulars [Dkt. 5-2].) Schur sought $25,000 in damages as "compensatory, consequential, and punitive damages" for Zackrison's "fraud, breach of fiduciary duties, negligence, gross negligence, recklessness, breach of contract/implied contract, malpractice." (Bill of Particulars at 7; Warrant in Debt.) About ten months later, on March 17, 2015, Schur nonsuited his case after receiving advice from his current attorney. (Mem. in Opp'n [Dkt. 8] at 6.)

The next day, March 18, 2015, Schur's attorney filed a new suit in Fairfax County Circuit Court against only the

3

Practice. (*Id.*) In his circuit court complaint, Schur sought $150,000 in compensatory damages and $350,000 in punitive damages for the Practice's alleged negligence, actual fraud, and constructive fraud. That case appears to be pending, although Defendants say they have not been served. (Mem. in Supp. [Dkt. 5] at 7.)

Finally, on August 10, 2015, Schur's attorney filed the present lawsuit against Zackrison and the Practice. The federal complaint includes a claim of intentional infliction of emotional distress ("IIED"), in addition to reasserting the claims of negligence, fraud, and constructive fraud Schur raised in general district court. (Compl. ¶ 57-81.) Defendants move to dismiss this case under 12(b)(1) for lack of jurisdiction, arguing that the amount in controversy is insufficient. Additionally, Defendants seek to dismiss the IIED claim under 12(b)(6) as untimely. For the following reasons, the Court will deny both bases of dismissal.

## II. Analysis

A. <u>Subject Matter Jurisdiction</u>

A district court "possesses only that power authorized by the Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). Congress has conferred on the district courts original jurisdiction in diversity cases between citizens of different States, between

U.S. citizens and foreign citizens, or by foreign states against U.S. citizens. 28 U.S.C. § 1332(a). "To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Allapattah Servs.*, 545 U.S. at 552.

As a general rule, "'the sum claimed by the plaintiff controls' the amount in controversy determination." *JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). "If the plaintiff claims a sum sufficient to satisfy the statutory requirement, a federal court may dismiss only if 'it is apparent to a legal certainty, that the plaintiff cannot recover the amount claimed.'" *Id.* (quoting *St. Paul Mercury Indem.*, 303 U.S. at 289). This legal certainty or "legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Wiggins v. N. Am. Equitable Life Assur. Co.*, 644 F.2d 1014, 1017 (4th Cir. 1981) (quoting *McDonald v. Patton*, 240 F.2d 424, 426 (4th Cir. 1957)). This difficult showing makes "dismissal on jurisdictional amount grounds rare." *Work v. U.S. Trade, Inc.*, 747 F. Supp. 1184, 1188 (E.D. Va. 1990). The burden of proving jurisdiction falls on the plaintiff, the party attempting to invoke the court's jurisdiction. *Id.*

When applying this 12(b)(1) analysis, a court may "consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Johnson v. Portfolio Recovery Assocs., LLC*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)). Additionally, a court may consider a settlement offer as proof of the amount in controversy under this jurisdictional analysis without conflicting with Federal Rule of Evidence 408's prohibition on the use of settlement offers as evidence. *See Brown v. Wal-Mart Stores, Inc.*, No. 5:13cv00081, 2014 WL 60044, at *1 n.1 (W.D. Va. Jan. 7, 2014) ("Even though settlement offers are inadmissible to prove liability under Rule 408 of the Federal Rules of Evidence, they are admissible to show that the amount in controversy for jurisdictional purposes has been met." (quoting *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 n.2 (7th Cir. 2011))).

Defendants raise three arguments they believe prove the amount in controversy cannot be met: (1) Schur filed a similar *pro se* case in general district court seeking only $25,000 for all compensatory and punitive damages; (2) Schur allegedly attempted to settle that *pro se* case for $19,000; and (3) Schur cannot, as a matter of law, prove the malice required to trigger punitive damages. For the following reasons, the Court finds no legal certainty that compensatory damages will

fall below the jurisdictional amount. Thus, jurisdiction is proper, even without considering any claim for punitive damages.

"Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003) (internal quotation and citation omitted). A plaintiff's losses could include necessary expenses, bodily injury, physical pain, inconvenience, and mental anguish, among others. *See Giant of Va., Inc. v. Pigg*, 207 Va. 679, 685 (Va. 1967) ("Compensatory damages are those allowed as recompense for loss or injury actually received and include loss occurring to property, necessary expenses, insult, pain, mental suffering, injury to the reputation and the like.").

In this case, Schur alleges theories of relief that, if proven, would potentially permit him to recover damages for a broad range of injuries. For example, if he succeeds on his claim of fraud, he could recover the financial damages he suffered as a result of the fraud. *See Pigott v. Moran*, 341 S.E.2d 179, 182 (Va. 1986) ("[W]hen sued upon at law, fraud will support a recovery for financial damage personal to the individual."). Additionally, his negligence claim would entitle him to damages proximately caused by Defendants' negligent acts. *See Cooper v. Whiting Oil Co., Inc.*, 311 S.E.2d 757, 760 (Va.

7

1984) (stating elements for negligence). These damages could include, not only the expenses he incurred, but also the pain, suffering, and inconvenience of any physical impact or injury Defendants' negligence caused. *See Bowers v. Sprouse*, 492 S.E.2d 637, 638 (Va. 1997) ("Certainly, at a minimum, this plaintiff experienced pain, suffering, and inconvenience as a result of the defendant's negligence and was entitled to compensation for these elements."). Additionally, damages for emotional distress may be available to the extent they are "proved or fairly inferred from injuries sustained." *Bruce v. Madden*, 160 S.E.2d 137, 140 (Va. 1968) (quoting *Perlin v. Chappell*, 96 S.E.2d 805, 868 (Va. 1957)). Applying these principles of compensatory damages, the Court does not find it legally certain that Schur's damages fall below $75,000.

Looking first at direct monetary damages, Schur alleges that Defendants' fraud and negligence caused him to be charged $25,000 in unnecessary medical treatments. Although these monetary damages are, without more, insufficient to satisfy the jurisdictional threshold, Schur alleges other potentially viable injuries.

At this stage of the case, Schur's allegations of unnecessary medical treatment are sufficient to constitute a physical injury permitting recovery for pain, suffering, and inconvenience. The Virginia Supreme Court has defined "injury"

to mean "positive, physical or mental hurt to the claimant." *Howard v. Alexandria Hosp.*, 429 S.E.2d 22, 25 (Va. 1993). In *Howard v. Alexandria Hospital*, the court found physical injury when the plaintiff's body "was invaded by intravenous tubes, needles administering 'pain shots,' and instruments used to withdraw blood," and various side effects of "the antibiotic therapy" doctors prescribed to remedy their negligent use of unsterilized instruments during surgery. *Id.*; *see also R.J. v. Humana of Fla., Inc.*, 652 So. 2d 360, 364 (Fla. 1995) ("Although we find that the touching of a patient by a doctor and the taking of blood for ordinary testing would not qualify for a physical impact, other more invasive medical treatment or the prescribing of drugs with toxic or adverse side effects would so qualify."). Similarly, in this case, Schur alleges he was prescribed antibiotic medication for four months, self-administered vitamins through injection, provided several blood samples, and was ordered to maintain a strict diet. At this stage, these allegations are sufficient to constitute a physical injury permitting Schur to recover for pain, injury, inconvenience, and suffering.

Additionally, Schur alleges mental and emotional injuries. A false-positive diagnosis typically does not support a claim for emotional damages when the diagnosis does not involve a contemporaneous and injurious course of treatment.

9

*See Hickman v. Lab. Corp. of Am. Holdings, Inc.*, 460 F. Supp. 2d 693, 702 (W.D. Va. 2006) (rejecting negligent misdiagnosis of HIV claim of plaintiff who received HIV treatment but no medication); *Goddard v. Protective Life Corp.*, 82 F. Supp. 2d 545, 556 (E.D. Va. 2000) (denying negligent HIV misdiagnosis claim where plaintiff received no treatment or medication because misdiagnosis was corrected only two days after the initial false-positive diagnosis). Schur, however, sufficiently alleges a contemporaneous course of treatment in this case. Thus, he may recover for mental anguish or emotional damages proved or fairly inferred from the physical impact or injury of that treatment. *See Bruce*, 160 S.E.2d at 139 ("Physical pain and mental anguish usually, and to some extent, necessarily flow from, or attend, bodily injuries." (quoting *Brown v. Hannibal & St. J.R. Co.*, 12 S.W. 655 (Mo. 1889)). Schur alleges that Defendants' conduct caused him to become concerned, to experience "severe anxiety and stress over his health," and to suffer severe emotional distress. Schur has also raised these injuries in his claim for intentional infliction of emotional distress.

In light of these potential sources of damages, the Court cannot conclude to a legal certainty that the amount in controversy falls below the jurisdictional threshold. Many of Schur's alleged damages are "unliquidated and not readily

subject to precise calculation." *John Crane, Inc. v. Hardick*, 722 S.E.2d 610, 616 (Va. 2012). As the Virginia Supreme Court has noted, "[t]here is no fixed rule or standard by which damages can be measured for mental and physical suffering." *Hughes v. Moore*, 197 S.E.2d 214, 220 (Va. 1973). And the "amount to be awarded is largely a question for the jury to determine in view of the facts and circumstances of each particular case." *Id.* It is not at all unusual for juries to return verdicts for emotional damages far exceeding the liquidated monetary damages a plaintiff incurs. *See, e.g.*, *Murphy v. Va. Carolina Freight Lines, Inc.*, 213 S.E.2d 769, 773 (Va. 1975) (reinstating jury verdict with a 19-to-1 ratio of nonmonetary to monetary damages when plaintiff suffered $1,250 in out-of-pocket medical expenses and was hospitalized for two weeks and bed-ridden for two months following a car accident). Schur alleges $25,000 in monetary damages. Additionally, Schur alleges being told he was "very ill, suffered from multiple conditions, and needed extensive treatment to help make him better," and that his conditions could cause him to "have a stroke, develop shingles, or develop other ailments." These statements caused him concern and "severe anxiety." Although a jury might not find these claims merit substantial compensation, it is not legally certain that a jury would award less than enough to push compensatory damages over $75,000. Therefore,

11

Schur's assertion that the amount in controversy has been met controls and, as there is no dispute that the parties are diverse,[1] jurisdiction exists.

Instead of refuting these alleged damages directly, Defendants ask the Court to discredit the amount claimed based on Schur's valuation and attempt to settle his lawsuit while he proceeded *pro se* in general district court.  These *pro se* actions, however, do not certainly establish the amount in controversy of this case.  As Schur notes, his early valuation of the case was based on his own misunderstanding of the damages available in Virginia.  This explanation is consistent with Schur nonsuiting his undervalued case immediately after receiving advice from counsel about the true value of his alleged injuries.  He then filed a new case seeking $150,000 in compensatory damages, in addition to punitive damages.  The Court can see no reason to discredit Schur's current valuation based on his earlier uninformed assessment of the case.

The Court turns now to Defendants' argument that Schur's claim of intentional infliction of emotional distress against Zackrison is time barred.  For the following reasons, that argument is unpersuasive.

---

[1]   Schur is an individual domiciled in Colorado.  (Compl. ¶ 1.)  Defendant Zackrison is an individual domiciled in Virginia.  (*Id.* ¶ 3.)  The Practice is a Virginia corporation with its principal place of business in Virginia.  (*Id.*)

12

B.        12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). When ruling on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 422 (1969). Moreover, "the complaint is to be liberally construed in the favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Federal Rule of Civil Procedure 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Rule 8 does not require "detailed factual allegations," but a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

Although a 12(b)(6) motion invites an inquiry into the legal sufficiency of the complaint, rather than an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996). Thus, a 12(b)(6) motion "generally cannot reach the merits of an affirmative defense, such as the defense

13

that the plaintiff's claim is time-barred." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). But the court may reach the issue "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint." *Id.*

Defendants argue Schur's IIED claim against Zackrison is barred by Virginia's two year statute of limitations. Although Defendants are correct that the two-year statute of limitations applies, *see* Va. Code § 8.01-243(A); *Lucas v. Henrico Cty. Sch. Bd.*, 822 F. Supp. 2d 589, 607 (E.D. Va. 2011) ("Virginia's two-year statute of limitations for personal injury applies to a claim for intentional infliction of emotional distress."), they are incorrect about the application of that statute in this case.

To determine whether Schur's IIED claim was timely, the Court must first determine when that claim accrued. Defendants identify the time of accrual as either when Schur first received the misdiagnosis and treatment or when Schur discovered he had been misdiagnosed. Although an injury typically accrues on the date "the injury is sustained . . . and not when the resulting damage is discovered," Va. Code § 8.01-230, the injury in this case is subject to an exception. In cases involving continuous and substantially uninterrupted medical treatment, the "continuing treatment rule" deems the

injury to accrue when treatment is terminated. *See Fenton v. Danaceau*, 255 S.E.2d 349 (Va. 1979); *see also Johnson v. Capital Area Permanente Grp.*, No. 113046, 1993 WL 945935, at *3 (Va. Cir. Ct. Feb. 1, 1993) (applying continuous treatment rule to doctor's misdiagnosis of HIV). Schur sufficiently alleges that he was under Defendants' continuous and uninterrupted treatment. Schur began a treatment of antibiotics upon his first visit to the Practice. (Compl. ¶ 17.) It appears he remained on this medication while awaiting Defendants' reading of his test results. After the test results returned about three weeks later, Schur continued to treat with Defendants. (*Id.* ¶ 25.) Specifically, Schur's treatment included "extensive prescriptions for antibiotics," vitamin injections, laboratory tests, a specific diet, and appointments with Defendants every two weeks. (*Id.* ¶¶ 28, 29, 32.) This "continuous and expensive treatment regime" appears to have continued uninterrupted for four months, until Schur finally sought a second opinion. (*Id.* ¶ 56.) Thus, Schur's IIED claim accrued when his treatment terminated around four months after his initial June 7, 2012 visit.[2] Under this calculation, the statute of limitations began

---

[2] The date of termination comes from the face of the bill of particulars filed in Arlington General District Court. (GDC Compl. [Dkt. 5-2] ¶¶ 4, 21, 31.) Reference to this earlier court filing does not convert this 12(b)(1) proceeding into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). The Court may take judicial notice of earlier proceedings,

15

to run, at the latest, in October 2012. Unless a tolling provision applies, Schur's August 10, 2015 filing of his federal complaint would not be within the two-year statute of limitations.

Although neither party's briefs addressed the issue of tolling, Virginia's nonsuit tolling doctrine applies to make Schur's IIED claim timely.[3] Under Virginia law, a properly filed nonsuit tolls the statute of limitations on a plaintiff's cause of action. This permits the plaintiff to recommence suit in federal court within six months after the nonsuit or within the original limitations period, whichever is longer. *See* Va. Code §§ 8.01-229(E)(3), -380. Schur's IIED claim is timely under this six month tolling provision.

Schur timely filed a related cause of action against Zackrison in Arlington General District Court on May 30, 2014. That complaint alleged facts substantively identical to those

---

especially when construed in the light most favorable to the moving party. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (taking judicial notice of complaint in related state court proceeding); *Commonwealth v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967) ("Applicable to our consideration here is the further rule that a federal court may take judicial notice of matters of record in state courts within its jurisdiction."); *Dunston v. Huang*, 709 F. Supp. 2d 414, 415 n.1 (E.D. Va. 2010) (looking to prior state court filings in statute of limitations analysis at motion to dismiss stage); *5-Star Mgmt., Inc. v. Rogers*, 940 F. Supp. 512, 518 (E.D.N.Y 1996) (taking judicial notice of fact alleged in state court complaint).

[3] The parties presented oral arguments regarding the application of nonsuit tolling at the November 19, 2015 hearing.

alleged in the present complaint. On March 17, 2015, Schur voluntarily nonsuited his general district court complaint. Thus, under Virginia Code § 8.01-229(E)(3), Schur had six months—until September 17, 2015—to refile his cause of action. Schur timely filed the IIED claim as part of this federal complaint on August 10, 2015, within the six month tolling period.

The nonsuit tolling doctrine applies even though Schur did not raise an IIED claim in his general district court complaint. A new claim may benefit from the nonsuit tolling doctrine when that claim arises from the same conduct, transaction or occurrence as the nonsuited action. *Dunston v. Huang*, 709 F. Supp. 2d 414, 420 (E.D. Va. 2010); *see also Law v. PHC-Martinsville, Inc.*, No. 13-73, 2014 WL 10320484, at *2 (Va. Cir. Ct. Oct. 2, 2014) (applying same transaction test). *But see Lawton-Gunter v. Meyer*, No. CL14-347, 2014 WL 8240004, at *4 (Va. Cir. Ct. June 12, 2014) (applying the "same-evidence test" to determine whether "new claims asserted in a recommenced action are part of a previously asserted cause of action" for nonsuit tolling purposes). In this case, it is clear that the IIED claim arises from the same transaction or occurrence as Schur's prior suit for fraud, negligence, and other claims. The transaction in the prior suit involved Defendants' alleged misdiagnosis and unnecessary treatment occurring between June

and October 2012.  Schur's IIED claim is based on the same misdiagnosis and course of treatment, including Defendants' statements regarding the seriousness of Schur's medical condition.  According to the complaint, Defendants' misdiagnosis caused him to undergo treatment and caused him severe anxiety.  Therefore, the IIED claim is part of the same cause of action as the nonsuited general district court case.  Hence, the IIED claim benefits from the tolling doctrine, making it timely.  Accordingly, the Court need not consider Schur's alternative argument that the federal complaint "relates back" to the general district court case under Virginia Code § 8.01-6.1 or Federal Rule of Civil Procedure 15(c).

       In conclusion, the Court notes the limited scope of its holding in this motion to dismiss.  Defendants' raised an affirmative defense as to only Schur's IIED claim.  Defendants did not challenge the prima facie sufficiency of the negligence, IIED, constructive fraud, or fraud allegations.  Therefore, this memorandum opinion does not address these issues.  Additionally, the Court's discussion of available damages must be viewed through the lens of the deferential legal standard applicable to jurisdictional changes.

### III. Conclusion

       For the forgoing reasons, the Court will deny Defendants' Motion to Dismiss the case for lack of jurisdiction

and deny Defendants' Motion to Dismiss the intentional infliction of emotional distress claim as untimely. The Court will grant Plaintiff's unopposed motion to voluntarily dismiss Defendant Zackrison, M.D., P.C.

An appropriate order will issue.

|  | /s/ |
|---|---|
| December 8, 2015 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |